Your Honors, the third case of the morning call, 2-11-1300, Peoples State of Illinois v. Chapel Craigen on behalf of the appellant, Mr. Kerry Goetsch, on behalf of the people, Ms. Catherine Coles. Good morning, counsel. Good morning. Mr. Goetsch. Good morning, Your Honors. My name is Kerry Goetsch, and I represent Chapel Craigen, the appellant in this case. The state charged Mr. Craigen with first-degree murder on a theory of accountability, alleging that he drove the car from which another man, Jabril Harmon, fired the shots that killed Jimmy Lewis Jr. The only evidence presented at trial tying Chapel to the shooting was a videotaped statement that Chapel gave while incarcerated in Mississippi on an unrelated matter. Chapel's defense had hoped to introduce a second recorded statement that he gave while incarcerated in Milwaukee, Wisconsin, to Milwaukee police. The defense argued that pursuant to the newly enacted rules of evidence in Illinois, that second recording from Milwaukee ought, in fairness, to be introduced to provide context. But that conversation was by different officers, two different officers, correct? It was a different detective, correct? And did not involve the murder, involve the theft of the automobile, correct? Initially, correct. They went up there knowing that the automobile was involved with the murder. Their questioning was related to the automobile, yes, but I find it highly unlikely that they would send three detectives from Waukegan to Milwaukee and record the statements without knowing that there was some involvement. And the second detectives, the detectives that went down to Mississippi, Detective Thomas in particular, said that he had reviewed the Milwaukee recording. So I think it's arguable that it was taken as a result and part and parcel of their investigation of the shooting. But now, you indicate that the Milwaukee interview, on that interview or in that interview, the defendant's tone was confrontational, defiant, but how would the defendant's tone and how would that interview assist the jury in understanding and evaluating the Mississippi interview? Well, the defense wanted to argue, and I think he wasn't allowed to because the jury didn't know about it, but that in just watching the Mississippi interview, you get a certain sense of, well, it looks like he's just, you know, out and out confessing to involvement in this. And the defense wanted to argue that the Milwaukee, his attitude, shaped the way that the detectives were going to view him as they drove to Mississippi and that his hope was to argue that there was some coercion here and that they got him to say, because it's such a striking contrast, he was hoping to present to the jury. You're saying such a striking contrast? Between his chapel's behavior in Milwaukee and in Mississippi. So the defense was hoping to argue that something must have happened, you know, the police aren't saying that something happened. Well, let's explore that, though, for a second, because is the purpose of 106 to aid in somebody's theory of the case or is 106 to introduce any other writing or statement that in fairness ought to be considered at the same time? I think probably one of the genesis of this rule was in today's society with modern technology, you have e-mails going back and forth on contract negotiations. So if you just had one part of the negotiations, it could be misleading and it wouldn't put the subject matter in context. What I'm wondering is, is how does the confrontational and defiant tone that you're alluding to to aid the defense theory of the case, how would, may not have it in it, prevent the jury, or if it does come in, how would that prevent the jury from being misled or provide contact or assist the jury in understanding the Clarksdale interview? You have to look at what is the document or the statement or the recorded interview being introduced. If it stands by itself to introduce another recording because it aids in your theory of the case, does that seem to comport with the purposes of 106? How is the jury misled by Clarksdale? By the content of the interview, what is being helped by the Milwaukee interview? What is being clarified? What in the content is being clarified? Well, I think there's a reason that, and maybe it's not necessarily the content, but the context, and I think it's useful for context more than content, but there's a reason why in murder investigations now the police are required to record their interrogations of suspects, and I think that the legislature in requiring that is somewhat recognizing that there is a context to these statements because when a police officer gets up there and says, the suspect said X, Y, Z, and if that's all that the jury has, then they don't really get the sense of how the investigation proceeded, how the detectives were acting prior to this statement. And so you get sort of a dry account of it by just... Well, the detectives were pretty confrontational with him in Milwaukee, correct? They had been sleeping. I mean, I think it's subject to interpretation as to whether the defendant was confrontational with them, if you listen to that tape. I mean, he didn't admit to, he said he didn't know anything about the car, but he wasn't asked about the murder, but, you know, I think maybe he might have raised his voice a little once or twice, but, I mean, that's all subject to interpretation. But back to Justice Hudson's question, how does this context help? Well, I think you pointed it out, it's more a context of how the detectives were interacting with him and with the detectives being confrontational. But what does it have to do with 106, which talks about writings and recording? Because I understand that he denied in Milwaukee any involvement in the crimes, correct? Yeah, he denied being in Milwaukee. Okay, so he has no involvement, according to him, that's the context of the Milwaukee interview. He goes down to Clarksdale and says something, and all of a sudden he's talking about it. How would bringing in a previous denial clarify the Clarksdale statement? It doesn't clarify anything because he denied everything in there. The defense wanted to clarify why he changed his mind. That's a theory, see, that's the difference. It has nothing to do with the statement. You want to clarify why he did something. It doesn't relate to the contents of the interview directly. But it could relate to the accuracy of the statements that were made in the interview. You bring up an interesting point that you didn't raise in your briefs, the purpose of the videotaping requirement in homicides. Did Capilouthi admit that there was some off-the-record conversation? He did. Why wasn't that issue raised below? Was it because the conversation occurred in Mississippi? Correct. Does Mississippi have a videotaping requirement in homicide cases? I do not know. I did refer to the videotaping requirement in my reply brief, but I believe the reason it wasn't raised below is that it was a sort of minor conversation. And I guess it was, according to Capilouthi, it was just a brief interaction in the hallway as he was returning from the bathroom. He waited there with Chappell and then brought him in. What was the conversation? What was the testimony? Well, again, according to Capilouthi, it involved whether he could have a cigarette. Chappell could have a cigarette. You know, just sort of basic small talk. Nothing substantive regarding that? Nothing substantive about the case, again, according to Capilouthi. So it's not clear that, especially since the judge believed Capilouthi's version of events, that there would have been a standalone issue regarding conversation under the statute. I'd like to move on and discuss a little bit about why this evidentiary issue isn't harmless. Because there's a reasonable doubt here that Chappell didn't take an active participant role in the shooting. He admits, even if you take the tape completely as true, he admits to being the driver. They were driving to go to a liquor store, and one of his passengers says, hey, there goes Kiko, do a U-turn. So Craig does a U-turn. He's following the car. And four to five blocks later, according to Detective Thomas, the shooting occurs. Well, the gun is also taken out. The gun is taken out. During that four to five block period, the gun is taken out by Donald Green, who is the front seat passenger, given to the back seat passenger on the driver's side, which is Harmon, and the shooting occurs. Craig has pulled next to the car. And he maintains the speed next to the car. Right? So when you say he pulls next to him, he maintains speed next to that car so that Harmon could take aim and make sure that— Well, it's a matter of minutes. He doesn't describe, you know, anything with regard to the pace that he takes. He's not saying, I did this so that he could shoot. He didn't use those words, but his actions were such that the cars were in a position where it could be done. He also said, did he not, that really they were aiming for, is it Kiki or Kiko? Kiko. Kiko. So that, I mean, he knew that. But if he had known that that was their intent, then arguably he would have pulled on the side that Kiko was. It was Kiko's car. Kiko was driving. If he had known— Well, he would have been in oncoming traffic then. I mean, that's what he said. Well, I mean, he certainly needs to be driving the wrong way with traffic possibly coming towards you. I'm sure he didn't want to kill himself, so. Well, or, yeah, the statement was, there goes Kiko, and he does the turn. Correct. Well, and somebody said, do a U-turn, and so he did. But arguably, I mean, his presence there and him even being the driver, I don't think is sufficient to prove that he was accountable for the shooting. What about his statements? Didn't he make admissions in the clerks? He admitted to being a driver, yes, but he never said, well, he denied that that was even their intent initially. I mean, they were going to the liquor store. So it was sort of a spontaneous action-reaction on the part of his passengers. And, yes, he did drive. But he had a motive for wanting to do that, didn't he? That IHOP incident as a motive for this murder where he was outnumbered at the IHOP? Well, and they were rival gangs. I mean, there was definitely—the gangs were at war at that time. But him being in a gang is different than proving that he was accountable for a specific shooting. Well, but he didn't just say he was in a gang. Of course, he admitted he was in a gang and that they were at war. But he talked about the incident at the IHOP. So, I mean, doesn't that reflect on his mental state and a motive to get back at what happened to him? But that doesn't necessarily mean he knows that there's a shooting involved. Well, his involvement in the gang, knowing that Kiekel's a rival gang member, and his presence as a driver while a gun is taken out and handed to the back seat, is certainly all relevant to establish the common design, correct? It's relevant to consider, yes. But I would argue it's not enough, especially— as long as you attach yourself to a group that's bent on criminal activity and you continue to participate in that activity. Well, I think if you look at Estrada, and I think that's why Estrada is so—it's almost on point in this case. Almost. Where the person gets out and the court says he's getting out to intimidate the rival gang member. He's got a pipe in his hand. I mean, he was probably going to beat the guy up. But one of his compadres is in the car with him, and he knows, as a gun, shoots the guy before he can get to him. But that's exactly why the court found that in favor of the defendant, because in Estrada the court reasoned that the defendant's act of exiting the car with the pipe negated any inference that he was part of a common design or plan. So it's different here because in there the court said, So why is he acting on his own if he's part of a common design or plan? That isn't what happened here at all. Right? He didn't jump out of the car and disassociate himself from the group in the car, did he? He did not jump out of the car because he was driving. I mean, it was a different scenario in that, yes, he had to continue driving or else they would have either crashed or— I mean, the car in Estrada was stopped so he could get out. So, I mean, I think there's a clear criminal intent in Estrada in that the court admits that his intent in getting out of the car was to intimidate the other gangbangers that were standing there. And, I mean— I think the case turned to that. I would suggest that the reason the court found there was no accountability was because he jumped out of the car. That was the key consideration in that case that distinguished him and his actions from the actions of those in the car. But not belaboring that, let me ask you another fundamental question. When a challenge to the sufficiency of the evidence is raised on appeal, what is our standard of review? Whether, in light of all the evidence, viewed most favorably to the State. A rational trial effect. That's a fairly high hurdle, isn't it? It's very high, yes. Unless you have any other questions, Jeb will ask that this course reverse his convictions or in the alternative, remain for a new trial. Thank you. Ms. Coles? Good morning, Your Honors. This is Kathryn Coles on behalf of the People Council. I'll address the second issue first. Starting with the second issue, the defendant's statement in Milwaukee was properly ruled an invisible. And this is both under the federal— You have to keep your voice up, please. We have a lot of background noise from the outside that comes in here and a very high ceiling, so please speak loudly. Sure. Based on the federal rules of evidence, if we adopt the federal rule that applies to four factors, then this Court can affirm, and also based on the Illinois Common Law rule, which arguably, yes, has changed since the Illinois Adaption of the Evidence Rule 106 in 2011 or 8. Well, why do we have to look at federal law to interpret the Illinois Rule of Evidence 106? I mean, if there is, and you did refer to Illinois Common Law, isn't Illinois Common Law consistent with the four factors in the federal rules on this issue? Yes, I think Illinois Common Law is consistent with the four factors, and you don't necessarily have to look at the federal four factors or adopt them. This is an argument that the defendant made, but I just wanted to also say that under those four factors, this statement wouldn't have been admissible. And under the Common Law, the thing that changed, I guess, with the Common Law and perhaps the Illinois Rule of Evidence 106 is the ought and fairness language. And under the Common Law, they didn't have the fairness factor, and that's why they had— Let's hold on to that. Ought and fairness, okay? Where's the flaw in his argument? We're not talking about different subject matters. Both the Waukegan interview, the Milwaukee one, excuse me, the Clarksdale, were on the same subject. He's involved in the offenses. So why can't he bring in the other one, in fairness, is what this rule says, to consider both of them because they dealt with the same subject matter? What's wrong with that? And, Your Honor, I don't think that the two were exactly on the same subject matter. I think the two interviews were completely different. They weren't about the homicide? They weren't about the shooting? The first interview was about the stealing of the Saturn. Well, it was asked if he was in Waukegan that night. It was asked if he was in Waukegan that night. However, they didn't specifically ask about the murder, and these detectives were different than the detectives who interviewed in Mississippi, and these detectives in Mississippi did not reference the Milwaukee interview at all during their interrogation. There's no way this statement would have been placed in context. What about, let's not talk about the context or the content, for the sake of a better word, of the statement, but to show that the defendant was not this cooperative type of person that he's portrayed in the subsequent interview in Mississippi, that something must have occurred, and that goes to whether the accuracy, he lost the motion to suppress, but it goes to the accuracy and the truthfulness of the statement. Isn't that a fair argument, that he should have at least been able to show that something happened? He wasn't cooperative with the police before. Now, suddenly, he's cooperative. Why would that have hurt the state's case so badly? Your Honor, whether it hurt the state's case so badly or not wasn't necessarily the point. Well, why even object to it? I can't speak to the exact motivations of the trial counsel below. However, it is an admissible hearsay, and I don't think it doesn't fall under— If it's not offered for the proof of truth of the matter asserted, it's not hearsay. If it's offered to show the attitude that the defendant did not have this cooperative attitude and tone just a few months earlier, why wouldn't it be admissible as a non-hearsay? It still would be considered hearsay because what it is is a denial, a blanket denial of his involvement in the crime, and those statements would not be allowed in, and they don't fall under the Rule 106 of completeness. When you look at the Illinois Common Law, which stressed that the statements had to be made at the same time, this would not be admissible. Well, here they don't have to be made at the same time, do they? Under 106, they have to be made at the same time? It's up to this Court to make that determination. So far, there's— I would suggest it doesn't because the rule says any other part or any other writing in audit and fairness, that would imply it doesn't have to be at the same time, obviously. And then if you look at the federal rules, which are identical to the Illinois Common Law, the Illinois Rules of Evidence, that's why the four factors are persuasive in this case because the rules are identical. And if you look at the four factors, the defendant's statement does not satisfy these four factors. It doesn't explain the admitted evidence. It doesn't place the admitted portions into context, and it doesn't avoid misleading the trier of fact, and it does not ensure an impartial understanding of the evidence. The defendant has argued for aiding his theory of the case. However, this doesn't fit into the four factors. The statements were months apart. One was made in October. The other one was made in January. They were made by two different detectives, and the detectives didn't refer to the— like, as I argued, it didn't refer to the Milwaukee statement at all. And the Milwaukee statement is not, and the Mississippi statement, are not like Haddad, which is the case the defense relies on heavily in his brief, because Haddad is referring to a statement that is one statement that happened all at once, happened the same day, and part of the statement the defendant denies to possessing drugs, or admits to possessing drugs, but denies to possessing the gun, and this part that's admitted is only the part where the defendant makes the admission. And the court said, in fairness, you need to admit the statement because they provide each other context since it's the same statement. Well, but the rules, I mean, you're right that it's different, but we're looking at the rule has changed. They don't have to be part of the same statement anymore. Another statement can be admitted. That's correct, and if you look at Reese, which is a case I cited, and my group, and I believe defense counsel cited as well, under the four factors there were two statements there that were separate, but the defendant had argued for both of those statements to be admitted. However, the court said they weren't contextually similar enough to have both of them admitted. So, yes, they don't have to be at the same time, but they do need to be contextually similar. Well, 106, would you agree, expands the common law, correct? The common law, if you have that in fairness, ought to be considered? Is that in the common law sometimes? No, Your Honor. So this implies sort of an expansion. So why shouldn't we give 106 an expansive ruling? This court should look to the federal interpretation of 106. Why do we need to? This is Illinois law. Federal rules are the exact same as Illinois rules. I would suggest that the Illinois rules of evidence were not intended to adapt the federal rules of evidence. And that's fine, but since the rules are so similar, I think that the federal law is very persuasive on this matter. Well, it certainly would be considered persuasive authority, but let's shift gears a little bit on his accountability argument. He relies heavily on Estrada. Similar people in a car, confrontation. Why doesn't Estrada carry the data? Estrada is distinguishable from this case because in Estrada, the defendant had left prior to the shooting occurring. The defendant had jumped out of the car with his tie rod and was going to go after someone, and someone else had left with a gun to shoot someone. Here we have the defendant in the car with three other companions. One person has the gun, hands it to the guy who's sitting directly behind the defendant. In order to avoid shooting the defendant, they have a brief discussion, and the defendant follows the car. He's an active participant. He's not merely present, as Estrada was merely present. Well, was he following directions? He was told to turn around. He turned around. I mean, how did he know what was going to happen? The defendant's actions and his statements to the police officer imply that he knew what was going to happen. He stated that the wrong guy was shot, he was in a rival gang, and he wasn't. But that's after the fact. He didn't talk about knowing ahead of time, did he, in his statement? I don't think so. No, I don't believe so, Your Honor. Well, his flight to Mississippi, his flight to Milwaukee certainly could be considered by a jury in evaluating his intent or knowledge at the time, correct? Yes, Your Honor. He didn't turn himself in right after the incident, and he didn't report to police, and he flied more. So in Estrada, the defendant's in the car, as he is in this case. He jumps out of the car. The defendant in Estrada did not disassociate himself from the criminal behavior, did he? He jumps out to attack somebody as well. So how is that distinguishable from this case? Well, in Estrada, the defendant was merely there when the shooting was happening. He wasn't an active participant, whereas the defendant here, he took the time to turn around the car. He had the car next to the Cadillac for enough time for his companion, Green, to shoot eight shots. So are you acknowledging that the defendant here had jumped out of the car, and he wouldn't have been found responsible? Your Honor, in Estrada, I'm not sure what would have happened if the facts had been different, but based on the facts in Estrada, because he had jumped out, he was not involved with the shooting, which happened somewhere in the area. But he was still a part of the group that was engaging in criminal behavior, wasn't he? He was, but there are additional facts here that indicate this is a distinguishable from Estrada, where the defendant admitted he was driving this car, turned around, followed it, and his actions afterwards. If the Court doesn't have any further questions. One more point on this issue that you raised about hearsay, the fear being that the defendant's hearsay statement about not being in Waukegan on that day. But the defendant withdrew his alibi defense, so he was not offering it to establish his alibi. He was offering it to just show the attitude, the change in attitude. So it doesn't really, I mean, that doesn't really support your theory that it was excluded properly on hearsay grounds. It was withdrawn. They weren't offering it for that purpose. And the state argued that they were offering it for the truth of the matter asserted because it was a self-serving statement where he's denying the admission of a crime or being involved in any sort of crime. So regardless of what their argument is, they were just trying to sneak it in through the back door? The state argued that it was being offered for the truth of the matter asserted. Thank you. Thank you. Mr. Gatch? I just wanted to touch on the Rule 106 argument a little bit more. I think it is clear that the standard of at the same time no longer applies, so that the common law cases that the state cites too, I think that standard has changed. Given the language of the rule. And I do think an expansive reading is necessary because the defense wanted this in for a reason. And the defense hints at what it would have been used for, context. But the defense couldn't follow through with that. So we don't know how it really affected the defense trial strategy. I think it's pretty clear it wasn't being brought in for its hearsay purposes. So... Well, the judge has to, in making the determination, has to examine the proposed piece of evidence and rule. And he has to consider fairness to both parties, not just the defendant's theory, but fairness to the state as well. Would you agree? I would agree. And the standard is abuse of discretion, correct? Correct. But I don't think that the judge used his discretion. The judge, although the defense argued that the rule had changed things, the judge was like, well, I'm still going to use the old rulings of this is inadmissible hearsay, so it can't come in even if there's a legitimate purpose under the rule. So I think the judge was relying on the way the rules of evidence used to be and wasn't. And he acknowledged that this rule might have changed things, but he's waiting for guidance from this Court on how to interpret the rule and how to apply it. Did the admissibility of this item of evidence totally hinge on 106? I mean, couldn't it have been admissible on another theory? Why was 106 the central point of the argument? What about the fact that he wanted to show his state of mind, which is just to put it bluntly, if it's for some purpose other than the truth of the language in the words, why couldn't it have been admissible on some other theory? Well, the defense was going under the theory of 106 because, A, it's a recorded statement, and it seemed to fit perfectly with the rule. I mean, for the purposes that he was using it for was to explain the Mississippi statement that was also recorded. So I think that was the logic there was that we have two recorded statements, both related to the same investigation. This should be able to come in. Well, but that's not just because they're related. That isn't the criteria. Just because they're related doesn't mean it has to come in. I mean, we've discussed all of this previously today. Yeah, the rule could say all related conversations have to come in because the statement. There's something a little bit beyond that. But I think the statement would have made the same argument that this is an admissible hearsay no matter what the defense was trying to get at. Probably. So I think the defense thought that the best avenue would be under the rule. And because it has changed what the common law was. So thank you. Thank you very much. The court will take the matter under advisement and render a decision in due course. The court stands in brief recess until the next case. Thank you, counsel.